CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
GESELL HERNANDEZ RIVERA and
SANTO RAFAEL HERNANDEZ
VENTURA, *individually and on behalf of*
*others similarly situated,*

         *Plaintiffs*,

    -against-

LONDON BOY SPORTSWEAR LTD (D/B/A
LONDONBOY STATION), MICHAEL'S
COLLECTIONS CORP. (D/B/A MICHAEL
FASHION), ALI KHALIL, and HASSAN
KHALIL,

         *Defendants.*
------------------------------------------------------X

            **COMPLAINT**

    **COLLECTIVE ACTION UNDER**
      **29 U.S.C. § 216(b)**

        **ECF Case**

    Plaintiffs Gesell Hernandez Rivera and Santo Rafael Hernandez Ventura, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, CSM Legal, P.C., upon their knowledge and belief, and as against London Boy Sportswear LTD (d/b/a Londonboy Station), Michael's Collections Corp. (d/b/a Michael Fashion), ("Defendant Corporations"), Ali Khalil and Hassan Khalil, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants London Boy Sportswear LTD (d/b/a Londonboy Station), Michael's Collections Corp (d/b/a Michael Fashion), Ali Khalil, and Hassan Khalil.

2.       Defendants owned, operated, or controlled two clothing stores, located at 2908 3rd Ave Bronx, NY 10455, and operating under the name "Londonboy Station" and at 2910 3rd Ave Bronx, NY 10455 under the name "Michael Fashion."

3.      Upon information and belief, individual Defendants Ali Khalil and Hassan Khalil, serve or served as owners, managers, principals, or agents of Defendant Corporations and through these corporate entities, operate or operated the retails as a joint or unified enterprise.

4.      Plaintiffs were employed as general assistants and salespersons at the retails located at 2908 3rd Ave Bronx, NY 10455 and 2910 3rd Ave Bronx, NY 10455.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

8.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without

providing the minimum wage and overtime compensation required by federal and state law and regulations.

9.      Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

10.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

12.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two clothing stores located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

13.     Plaintiff Gesell Hernandez Rivera ("Plaintiff Hernandez Rivera" or "Ms. Hernandez Rivera") is an adult individual residing in Bronx County, New York.

14.     Plaintiff Hernandez Rivera was employed by Defendants at Londonboy Station and Michael Fashion from approximately 2014 until on or about February 11, 2022.

15.     Plaintiff Santo Rafael Hernandez Ventura ("Plaintiff Hernandez Ventura" or "Mr. Hernandez Ventura") is an adult individual residing in Bronx County, New York.

16.     Plaintiff Hernandez Ventura was employed by Defendants at Londonboy Station and Michael Fashion from approximately February 24, 2018 until on or about February 11, 2022.

*Defendants*

17.     At all relevant times, Defendants owned, operated, or controlled two clothing stores, one now closed store located at 2910 3rd Ave Bronx, NY 10455 operating under the name "Michael Fashion" and at 2908 3rd Ave Bronx, NY 10455 under the name "Londonboy Station".

18.     Upon information and belief, London Boy Sportswear LTD (d/b/a Londonboy Station) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2908 3rd Ave, Bronx, NY 10455.

19.     Upon information and belief, Michael's Collections Corp (d/b/a Michael Fashion) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2910 3rd Ave Bronx, NY 10455.

20.     Defendant Ali Khalil is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ali Khalil is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Ali Khalil possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the

wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

21.     Defendant Hassan Khalil is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Hassan Khalil is sued individually in his capacity as a manager of Defendant Corporations. Defendant Hassan Khalil possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

22.     Defendants operate two clothing stores located in the neighborhood South Bronx.

23.     Individual Defendants, Ali Khalil and Hassan Khalil, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

24.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

25.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

26.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

27.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

28.     Upon information and belief, Individual Defendant Ali Khalil operates Defendant Corporations as either alter egos of himself and/or failed to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporations for his own benefit as the sole or majority shareholder,

e)  operating Defendant Corporations for his own benefit and maintaining control over these corporations as closed corporations,

f)  intermingling assets and debts of his own with Defendant Corporations,

g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect his own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

29.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

30.     In each year from 2016 to 2022, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

31.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the retails on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

32.     Plaintiffs are former employees of Defendants who were employed as general assistants.

33.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Gesell Hernandez Rivera*

34.     Plaintiff Hernandez Rivera was employed by Defendants from approximately 2014 until on or about February 11, 2022.

35.     Defendants employed Plaintiff Hernandez Rivera as a general worker and salesperson.

36.     Plaintiff Hernandez Rivera regularly handled goods in interstate commerce, such as retail and other supplies produced outside the State of New York.

37.     Plaintiff Hernandez Rivera's work duties required neither discretion nor independent judgment.

38.     Throughout her employment with Defendants, Plaintiff Hernandez Rivera regularly worked in excess of 40 hours per week.

39.     From approximately April 2016 until on or about 2018, Plaintiff Hernandez Rivera worked as a general assistant at Michael Fashion from approximately 10:00 a.m. until on or about 8 p.m., Mondays through Thursdays, from approximately 10:00 a.m. until on or about 8:30 p.m., Fridays through Saturdays, and from approximately 10:00 a.m. until on or about 7:30 p.m., Sundays (typically 51 to 71 hours per week).

40.     From approximately 2019 until on or about February 11, 2022, Plaintiff Hernandez Rivera worked as general assistant at Londonboy Station from approximately 10:00 a.m. until on or about 8:00 p.m., Mondays through Thursdays, from approximately 10:00 a.m. until on or about 8:30 p.m., Fridays through Saturdays, and from approximately 10:00 a.m. until on or about 7:30 p.m., Sundays (typically 51 to 71 hours per week).

41.      Throughout her employment as a general assistant at Michael Fashion, Plaintiff Hernandez Rivera worked 5-6 days per week during the months of January and February (typically 50-63 hours per week).

42.     Throughout her employment as a general assistant at Michael Fashion, Plaintiff Hernandez Rivera worked 7 days a week during the month of March (typically 70.5 hours per week).

43.     Throughout her employment as a general assistant at Michael Fashion, Plaintiff Hernandez Rivera worked 6 days per week during the months of April and May (typically 63 hours per week).

44.     Throughout her employment as a general assistant at Michael Fashion, Plaintiff Hernandez Rivera worked 5-6 days per week during the months of June through August (typically 50-63 hours per week).

45.     Throughout her employment as a general assistant at Michael Fashion, Plaintiff Hernandez Rivera worked 6 days per week, during the months of September through November (typically 63 hours per week)

46.     Throughout her employment as a general assistant at Michael Fashion, Plaintiff Hernandez Rivera worked 7 days a week during the month of December (typically 70.5 hours per week)

47.     Throughout her employment as a general assistant at Londonboy Station, Plaintiff Hernandez Rivera worked 5-6 days per week during the months of January and February (typically 50-63 hours per week).

48.     Throughout her employment as a general assistant at Londonboy Station, Plaintiff Hernandez Rivera worked 7 days a week during the month of March (typically 70.5 hours per week).

49.     Throughout her employment as a general assistant at Londonboy Station, Plaintiff Hernandez Rivera worked 6 days per week during the months of April and May (typically 63 hours per week).

50.     Throughout her employment as a general assistant at Londonboy Station, Plaintiff Hernandez Rivera worked 5-6 days per week during the months of June through August (typically 50-63 hours per week).

51.     Throughout her employment as a general assistant at Londonboy Station, Plaintiff Hernandez Rivera worked 6 days per week, during the months of September through November (typically 63 hours per week)

52.     Throughout her employment as a general assistant at Londonboy Station, Plaintiff Hernandez Rivera worked 7 days a week during the month of December (typically 70.5 hours per week)

53.     From approximately January 2016 until on or about September 2021, Defendants paid Plaintiff Hernandez Rivera her wages in cash.

54.     From approximately September 2021 until on or about February 11, 2022, Defendants paid Plaintiff Hernandez Rivera her wages in a combination of check and cash.

55.     From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Hernandez Rivera a fixed salary of $60 per day.

56.     From approximately January 2017 until on or about December 2018, Defendants paid Plaintiff Hernandez Rivera a fixed salary of $70 per day.

57.     From approximately January 2019 until on or about December 2019, Defendants paid Plaintiff Hernandez Rivera a fixed salary of $80 per day.

58.     From approximately January 2020 until on or about September 26, 2021, Defendants paid Plaintiff Hernandez Rivera a fixed salary of $100 per day.

59.     From approximately September 26, 2022 until on or about February 11, 2022, Defendants paid Plaintiff Hernandez Rivera a fixed salary of $150 per day.

60.     Plaintiff Hernandez Rivera was not required to keep track of her time. Upon information and belief, Defendants had a time tracking device, but she did not use it.

61.    On a number of occasions, usually once a year, Defendants required Plaintiff Hernandez Rivera to sign a document, misrepresenting that Plaintiff Hernandez Rivera was paid the correct minimum wage and was a part-time worker. Plaintiff Hernandez Rivera was told if she did not sign this document, the Defendants would not provide her with her tax documents for that year.

62.    No proper notification, either in the form of posted notices or other means, was ever given to Plaintiff Hernandez Rivera regarding overtime and wages under the FLSA and NYLL.

63.    Defendants did not provide Plaintiff Hernandez Rivera an accurate statement of wages, as required by NYLL 195(3).

64.    In fact, Defendants adjusted Plaintiff Hernandez Rivera's paystubs so that they reflected inaccurate wages and hours worked.

65.    Defendants did not give any notice to Plaintiff Hernandez Rivera in English and in Spanish (Plaintiff Hernandez Rivera's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Santo Rafael Hernandez Ventura*

66.    Plaintiff Hernandez Ventura was employed by Defendants from approximately February 24, 2018 until on or about February 11, 2022.

67.    Defendants employed Plaintiff Hernandez Ventura as a general worker and Salesperson.

68.    Plaintiff Hernandez Ventura regularly handled goods in interstate commerce, such as retail and other supplies produced outside the State of New York.

69.    Plaintiff Hernandez Ventura's work duties required neither discretion nor independent judgment.

70.     Throughout his employment with Defendants, Plaintiff Hernandez Ventura regularly worked in excess of 40 hours per week.

71.     From approximately February 24, 2018 until on or about December 2018, Plaintiff Hernandez Ventura worked as a general assistant at both Michael Fashion and Londonboy Station from approximately 10:00 a.m. until on or about 8:00 p.m., Mondays through Thursdays, from approximately 10:00 a.m. until on or about 8:30 p.m., Fridays through Saturdays, and from approximately 10:00 a.m. until on or about 7:30 p.m., Sundays (typically 51 to 71 hours per week).

72.     From approximately January 2019 until on or about February 11, 2022, Plaintiff Hernandez Ventura worked as a general assistant at Londonboy Station from approximately 10:00 a.m. until on or about 8:00 p.m., Mondays through Thursdays, from approximately 10:00 a.m. until on or about 8:30 p.m., Fridays through Saturdays, and from approximately 10:00 a.m. until on or about 7:30 p.m., Sundays (typically 51 to 71 hours per week).

73.     Throughout his employment as a general assistant at Michael Fashion, Plaintiff Hernandez Ventura worked 5-6 days per week during the months of January through February (typically 50-63 hours per week).

74.     Throughout his employment as a general assistant at Michael Fashion, Plaintiff Hernandez Ventura worked 7 days a week during the month of March (typically 70.5 hours per week)

75.     Throughout his employment as a general assistant at Michael Fashion, Plaintiff Hernandez Ventura worked 6 days per week during the months April through May (typically 63 hours per week)

76.     Throughout his employment as a general assistant at Michael Fashion, Plaintiff Hernandez Ventura worked 5-6 days per week during the months June through August (typically 50-63 hours per week)

77.     Throughout his employment as a general assistant at Michael Fashion, Plaintiff Hernandez Ventura worked 6 days per week during the months of September through November (typically 63 hours per week)

78.     Throughout his employment as a general assistant at Michael Fashion, Plaintiff Hernandez Ventura worked 7 days a week during the month of December (typically 70.5 hours per week).

79.     Throughout his employment as a general assistant at Londonboy Station, Plaintiff Hernandez Ventura worked 5-6 days per week during the months of January through February (typically 50-63 hours per week).

80.     Throughout his employment as a general assistant at Londonboy Station, Plaintiff Hernandez Ventura worked 7 days a week during the month of March (typically 70.5 hours per week)

81.     Throughout his employment as a general assistant at Londonboy Station, Plaintiff Hernandez Ventura worked 6 days per week during the months April through May (typically 63 hours per week)

82.     Throughout his employment as a general assistant at Londonboy Station, Plaintiff Hernandez Ventura worked 5-6 days per week during the months June through August (typically 50-63 hours per week)

83.     Throughout his employment as a general assistant at Londonboy Station, Plaintiff Hernandez Ventura worked 6 days per week during the months of September through November (typically 63 hours per week)

84.     Throughout his employment as a general assistant at Londonboy Station, Plaintiff Hernandez Ventura worked 7 days a week during the month of December (typically 70.5 hours per week).

85.     From approximately February 11, 2018 until on or about September 2021, Defendants paid Plaintiff Hernandez Ventura his wages in cash.

86.     From approximately September 2021 until on or about February 11, 2022, Defendants paid Plaintiff Hernandez Ventura his wages in a combination of check and cash.

87.     From approximately February 11, 2018 until on or about December 2018, Defendants paid Plaintiff Hernandez Ventura a fixed salary $60 a day.

88.     From approximately January 2019 until on or about December 2019, Defendants paid Plaintiff Hernandez Ventura a fixed salary of $70 per day.

89.     From approximately January 2020 until on or about August 2020, Defendants paid Plaintiff Hernandez Ventura a fixed salary of $80 per day.

90.     From approximately September 2020 until on or about January 2021, Defendants paid Plaintiff Hernandez Ventura a fixed salary of $90 per day.

91.     From approximately February 2021 until on or about September 2021, Defendants paid Plaintiff Hernandez Ventura a fixed salary of $100 per day.

92.     From approximately September 27, 2021 until on or about February 11, 2022, Defendants paid Plaintiff Hernandez Ventura a fixed salary of $150 per day.

93.     Plaintiff Hernandez Ventura was not required to keep track of his time. Upon information and belief, Defendants had a time tracking device, but he did not use it.

94.     Upon information and belief, on a number of occasions, Defendants required Plaintiff Hernandez Ventura to sign a time card with his name and date but with the hours and payment left in blank, in order to release his weekly pay. Defendants also required Plaintiff Hernandez Ventura to sign forms with his name and date, the contents of which he was not allowed to review in detail.

95.     No proper notification, either in the form of posted notices or other means, was ever given to Plaintiff Hernandez Ventura regarding overtime and wages under the FLSA and NYLL.

96.     Defendants did not provide Plaintiff Hernandez Ventura an accurate statement of wages, as required by NYLL 195(3).

97.     Upon information and belief, Plaintiff Hernandez Ventura believes Defendants adjusted Plaintiff Hernandez Ventura's paystubs so that they reflected inaccurate wages and hours worked.

98.     Defendants did not give any notice to Plaintiff Hernandez Ventura, in English and in Spanish (Plaintiff Hernandez Ventura's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

99.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

100.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

101.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

102.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

103.    Defendants' time keeping system did not reflect the actual hours that Plaintiff Hernandez worked.

104.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

105.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked. Defendants paid Plaintiffs their wages in a combination of check and cash.

106.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL

107.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

108.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

109.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

110.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

111.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

112.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

113.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

114.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

115.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

116.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

117.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

118.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

119.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

120.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

121.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

122.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

123.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

124.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

125.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

126.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

127.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs,

controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

128.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

129.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

130.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

131.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

132.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay all Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

133.     Defendants' failure to pay all Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

134.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

135.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

136.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

137.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

138.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

140.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime

compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(k)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(l)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(m)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

April 29, 2022

CSM LEGAL, P.C

By:     _____/s/ Catalina Sojo, Esq._____
Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# CSM Legal, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

February 15, 2022

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         Gesell  Hernandez Rivera

Legal Representative / Abogado:     CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                              15 de febrero 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

February 15, 2022

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Santo Rafael Hernandez Ventura

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                     15 de febrero 2022

*Certified as a minority-owned business in the State of New York*